Joseph **LOYD**, Individually and as Class Representative, Jo Ann Martin, Executrix of the Estate of Joseph Green, Deceased, The Certified Class Of Plaintiffs, and Pulte Home Corporation, Appellants,

v.

**ECO RESOURCES, INC.** and Harris County Municipal Utility District No. 81, Appellees.

No. 14–95–01233–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 18, 1997.

---

Pascal P. Piazza, Maurice B. Bresenhan, Jr., Aubrey Martin, Jr., Mario L. Vasquez, Houston, for appellants.

Rick Gibson, Evelyn T. Allts, Terri S. Sechrist, Michael L. Burnett, Houston, for appellees.

Before LEE, AMIDEI, and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Appellants, Joseph Loyd, Individually and as Class Representative, Jo Ann Martin, Executrix of the Estate of Joseph Green, Deceased, the Certified Class of Plaintiffs and Pulte Home Corporation, appeal summary judgments granted in their class action suit against appellees, ECO Resources, Inc. (ECO) and Harris County Municipal Utility District No. 81 (the MUD), for damages to their water pipes allegedly caused by corrosive water sold to the class. Appellants bring two points of error complaining generally that the trial court erred in granting the

take-nothing judgments against them.[1] The MUD brings a cross-point contending it is entitled to costs as damages because appellants have brought this appeal without sufficient cause. We affirm in part and reverse and remand in part.

The MUD is a statutory municipal utility district created in 1974 for the purpose of operating and maintaining water and sewer works. The MUD sold water on a monthly basis to the homeowners in the Memorial Parkway Subdivision (the Subdivision) in Katy. By contract dated August 21, 1980, the MUD retained ECO to operate and maintain its water and sewer works and to deliver the water to the homeowners. Under the terms of the contract, for each home in the Subdivision, ECO was to install the tap and pipes, install the meter, distribute the water, read the meter, and bill and collect the monthly payments.

On November 6, 1989, Pulte Home Corporation (Pulte), through its counsel, served a statutory demand letter on the MUD complaining that the MUD's water caused pipe leaks in numerous homes in the district. In April 1990, Pulte sent a letter to the homeowners within the district advising them that Pulte considered the water supplied by the MUD to be highly corrosive and the cause of damages to plumbing systems in their homes. On May 8, 1990, Pulte filed suit alleging that because the MUD and ECO were not adding corrosion inhibitors to the water supplied to homes in the Subdivision, galvanized steel water pipes installed by Pulte in a number of the homes were corroding and leaking (the 1990 suit). Pulte requested that the MUD and ECO reimburse it for all sums it incurred in responding to pipe corrosion complaints. In addition, Pulte also asked the trial court to enter an injunction compelling the MUD and ECO to treat the water to reduce the alleged corrosive nature of the water. Pulte also sought a declaratory judgment that the MUD and

ECO were solely responsible for the alleged pipe corrosion and resulting damages.

On June 28, 1990, the MUD filed a motion for summary judgment and a motion to dismiss as to all of Pulte's causes of action and requested relief. One of the grounds for summary judgment was that Pulte's allegations against the MUD were barred by the doctrine of governmental immunity. The basis for the motion to dismiss was that Pulte's requests were not within the scope of the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997); *see, e.g., Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985) (a declaration of non-liability in a suit for damages is not a proper function of the Declaratory Judgments Act). ECO filed a similar motion to dismiss. On August 29, 1990, the trial court granted the motions for summary judgment and to dismiss. Pulte did not appeal these orders.

This suit was filed against ECO on April 15, 1992 by Pulte, Joseph Loyd and Joseph Green.[2] On December 3, 1992, the trial court certified a class of all persons who purchased a home in Sections Nine and Thirteen of the Subdivision and were provided water and waste water treatment by the MUD and ECO. The class asserted that ECO operated the water and waste water treatment system as the MUD's agent and independent contractor, and that ECO improperly treated the water it supplied to the class members' homes. They contend that chemicals should have been added to the water to alleviate alleged highly corrosive tendencies of the water, which caused damages to their water pipes. Appellants claim that beginning in 1989, the galvanized steel pipes in their homes began to leak and become "extensively corroded."

In December 1993, ECO moved for summary judgment, and on January 11, 1994, the trial court granted a partial summary judgment for ECO on appellants' contract and UCC warranty claims. On March 28, 1994,

---

1. These general points of error are sufficient to allow argument as to all the possible grounds upon which appellants contend summary judgment should have been denied. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970).

2. After suit was filed, Joseph Green died, and Jo Ann Martin, acting as Independent Executrix of the Estate of Joseph Green, pursues the litigation on the decedent's behalf.

the MUD was added as a defendant against Pulte, in its individual capacity, who alleged a single cause of action for nuisance, and the class added a nuisance claim against ECO. The MUD filed a motion for summary judgment alleging that Pulte's nuisance claim was barred by res judicata, limitations and sovereign immunity. In the Third Amended Original Petition, filed on August 22, 1994, the class added the MUD as a defendant. The MUD also filed a cross-action against Pulte alleging its negligence was the cause of the pipe damage. The trial court granted a partial summary judgment against Pulte on its nuisance claim on October 4, 1994. The MUD filed a second motion for summary judgment in this suit, followed by a supplemental motion, based on grounds that appellants' remaining claims were barred as a matter of law by immunity, limitations, and res judicata. ECO also filed a subsequent motion for summary judgment on the remaining claims against it. In addition, ECO filed a counterclaim against appellants alleging their DTPA action against it was brought in bad faith. On June 14, 1995, the trial court granted separate take-nothing judgments on all remaining claims against the MUD and ECO. On June 28, 1995, the trial court dismissed the MUD's cross-action against Pulte and ECO's counterclaim against appellants, making the summary judgments final. This appeal resulted.

### Standard of Review

■ In reviewing a summary judgment, we take the evidence favorable to the non-movant as true and indulge every reasonable inference in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When a trial court does not specify the grounds upon which it grants a summary judgment, as here, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995).

### Claims against the MUD

Appellants alleged causes of action against the MUD for breach of express and implied contracts, violations of Article 2 of the UCC including breach of express and implied warranties, nuisance, and products liability. The MUD contends the trial court properly granted both of its motions for summary judgment because appellants' claims are barred by the doctrine of governmental immunity, the applicable statutes of limitations, and res judicata.

### Immunity

■ One of the MUD's grounds for summary judgment was that appellants' claims are barred by the doctrine of governmental immunity. Immunity is an affirmative defense, which the MUD properly pleaded. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Accordingly, the MUD must establish all the elements of the defense as a matter of law. *See id.*

■ Municipal utility districts such as this one are created under the authority of article XVI, section 59 of the Texas Constitution.[3] TEX. CONST. art. XVI, § 59; TEX. WATER CODE ANN. § 54.011 (Vernon 1972); *see Monsanto Co. v. Cornerstones MUD,* 865 S.W.2d 937, 940 n. 4 (Tex.1993). Water districts and like entities created under section

---

**3.** Section 59 of article XVI of the Texas Constitution provides in relevant part:

(a) The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

59 of article XVI of the Texas Constitution can only perform governmental functions.[4] *See Bennett v. Brown County Water Imp. Dist. No. 1*, 153 Tex. 599, 272 S.W.2d 498, 500 (1954); *Sears v. Colorado River Mun. Water Dist.*, 487 S.W.2d 810, 812 (Tex.Civ.App.—Eastland 1972, writ ref'd n.r.e.) (a water district is a political subdivision of the State, standing on the same footing as counties, rendering cases finding municipalities liable for proprietary functions inapplicable). As a general rule, sovereign immunity applies to governmental functions. *Bennett v. Tarrant County Water Control and Improvement Dist. No. 1*, 894 S.W.2d 441, 450 n. 11 (Tex. App.—Fort Worth 1995, writ denied). Accordingly, the district is immune from liability unless the legislature has expressly waived its immunity by clear and unambiguous language. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995).

 Sovereign immunity includes both immunity from suit and immunity from liability. *Missouri Pac. R.R. Co. v. Brownsville Nav. Dist.*, 453 S.W.2d 812, 813 (Tex.1970). The State may consent to suit by statute or by legislative resolution. *Id.* at 814. Immunity from liability protects the State from judgment even if the legislature has expressly given consent to the suit. *Id.* at 813. In other words, even if the legislature authorizes suit against the State, the question remains whether the claim is one for which the State acknowledges liability. *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 425 (1936). The State neither creates nor admits liability by granting permission to sue. TEX. CIV. PRAC. & REM.CODE ANN. § 107.002(b) (Vernon Supp.1997) ("A resolution granting permission to sue does not waive to any extent immunity from liability.").

 In this case, the MUD's immunity from suit has been waived by the legislature. *See* TEX. WATER CODE ANN. § 49.066(a) (Vernon Supp.1997) (a district may sue and be sued); *Missouri Pac. R.R.*, 453 S.W.2d at

814 (statutory "sue or be sued" clause waives State's immunity from suit). When the State contracts with private citizens it waives immunity from liability, but not from suit, in the absence of legislative consent. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409–12 (1997). Appellants contend the MUD impliedly contracted with them that the water it supplies will not corrode their pipes. Thus, appellants argue that because a contract exists between the MUD and the class through which the MUD waived immunity from liability, sovereign immunity has been waived for their breach of contract claims against the MUD.

 The MUD argues that so long as the State is engaged in discharging any of its governmental functions, it has sovereign immunity. *See Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 999 (1898). Immunity from liability may be waived when a governmental entity "enters into an ordinary business contract . . . [or] engages in business and the conduct of business enterprises. . . ." *Id.*, 45 S.W. at 1000. The rationale for waiving immunity when a governmental entity voluntarily contracts with a third party during the ordinary course of business is that the entity has participated in an arms-length transaction and negotiated the parameters of its contractual obligations and liabilities. *See id.* In this case, however, there is no evidence in our record from which we could find that the MUD is obligated through an implied contract to deliver water that would not accelerate the corrosion of the residents' water pipes. Moreover, the MUD is performing a governmental function when it provides water to its residents. As such, the MUD has not entered an *ordinary* business contract. *Cf. Harris County MUD No. 48 v. Mitchell*, 915 S.W.2d 859, 861 n. 1 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (noting that the district's immunity from liability was waived because it had entered a loan contract); *Alcorn v. Vaksman*, 877 S.W.2d 390, 403 (Tex. App.—Houston [1st Dist.] 1994, writ denied)

---

4. A "governmental function" is an activity that is carried out as an arm of the State for the purpose of serving the general public. *City of Houston v. Southwest Concrete Constr. Inc.*, 835 S.W.2d 728, 730 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The distinction between proprietary and governmental functions does not apply to counties and other political subdivisions of the State. *Adams v. Harris County*, 530 S.W.2d 606, 608 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

(holding that catalog published by a state university formed a contract, waiving immunity between the state and a student enrolled in the university).

As authority to support the existence of an implied contract, appellants cite *El Paso County Water Imp. Dist. No. 1 v. Grijalva*, 783 S.W.2d 736 (Tex.App.—El Paso 1990), *writ denied*, 795 S.W.2d 705 (Tex.1990). In *Grijalva*, a farmer sued the water district for crop loss based on his claim of unreasonable delay in delivery of water. The court held that a contract arose as a matter of law between the farmer and the district because the farmer was a member of the district and was entitled to water upon the payment of his "water tax" and the ordering of his water. *Id.* at 739. In denying application for writ of error, the Texas Supreme Court specifically declined "to express an opinion on and [its opinion] *should not be read to approve*" the portion of the court of appeals' opinion which found an implied contract to deliver water arose between the water district and one of its members as a matter of law. 795 S.W.2d at 706 (emphasis added). For this reason, as well as the factual differences between *Grijalva* and this case, we decline to follow *Grijalva*.

To accept appellants' theory that an implied contract waives the MUD's immunity under these facts would effectively strip all immunity from the MUD without clear, unambiguous language from the Texas legislature waiving that immunity. In the absence of state or federal guidelines or rules about what constitutes unacceptably corrosive water, the MUD should not be liable for breaching an implied contract to provide non-corrosive water. We conclude that immunity has not been waived for appellants' contract claims against the MUD.

■ The legislature has waived immunity for torts committed by state agencies or officers in limited circumstances in the Texas Tort Claims Act (TTCA). The TTCA provides for the waiver of governmental immunity in three general areas: the use of publicly

owned automobiles or other motor-driven equipment, premises defects, and injuries arising out of conditions or uses of property. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976). Specifically, the relevant sections of the TTCA provide that a governmental unit of the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Pleading and proof of an exception to governmental immunity are required if a party seeks recovery under the Texas Tort Claims Act. *City of Houston v. Goings*, 795 S.W.2d 829, 832 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *see also Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983).

■ This court has previously found that a district such as this one is immune from liability for tort claims. *See Brubaker v. Brookshire Mun. Water Dist.*, 808 S.W.2d 129, 132 (Tex.App.—Houston [14th Dist.] 1991, no writ) (holding that all of appellant's tort claims arising out of the water district's failure to provide water and sewer services to an apartment project were barred by governmental immunity). Moreover, appellants did not plead that their damages were caused by a MUD employee negligently operating motor-driven equipment or by the condition or use of tangible personal or real property.[5]

---

5. While this suit is primarily for property damage, appellants also pleaded that they suffered mental anguish so that both subsections of section 101.021 might have been applicable. *See*

*Likes v. City of Tyler*, 910 S.W.2d 525, 527–29 (Tex.App.—Tyler 1995, writ granted); *Brown & Root, Inc. v. City of Cities MUD*, 721 S.W.2d 881,

Therefore, immunity is not waived for appellants' tort claims.

 Furthermore, sovereign immunity is not waived under the TTCA for discretionary acts. TEX. CIV. PRAC. & REM.CODE ANN. § 101.056(2) (Vernon 1997);[6] *State v. Hynes,* 865 S.W.2d 943, 944 (Tex.1993). The discretionary function exception to the waiver of governmental immunity is designed to avoid judicial review of governmental policy decisions. *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). Thus, a governmental entity is immune from liability if an injury results from the formulation of policy. However, a governmental unit is not immune if an injury is caused by the negligent implementation of that policy. *See Terrell,* 588 S.W.2d at 787–88. This distinction is often stated in terms of actions taken at the planning or policy-making level, which are immune, and actions taken at the subordinate or operational level, which are not immune. *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland,* 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied). The issue of whether a governmental unit's acts are discretionary in nature, and thus immune from liability, is a question of law. *Barker v. City of Galveston,* 907 S.W.2d 879, 887 (Tex. App.—Houston [1st Dist.] 1995, writ denied). If an act involves personal deliberation, decision, and judgment, it is discretionary. *Chambers,* 883 S.W.2d at 654. If an act is such that the actor has no choice, where the law prescribes and defines the duties to be performed with such precision as to leave nothing to the exercise of discretion or judgment, it is ministerial. *Id.*

 The gist of appellants' complaints against the MUD are that they have been injured by the MUD's decision not to add corrosion inhibitors to its water supply. It is undisputed that there is no statute, rule or regulation requiring the MUD to add corro-

sion inhibitors to its water supply. The MUD has the discretionary power to establish policies it deems necessary to supply water to the residents within its boundaries. *See* TEX. WATER CODE ANN. § 54.201 (Vernon 1972 & Supp.1997); *see also, e.g., Crossland,* 781 S.W.2d at 433 (finding the water district's decision not to post warning signs on a bridge was discretionary). The president of the MUD's board of directors, John Savage, furnished an affidavit in support of the motion for summary judgment which stated that "[t]he Board of Directors of the District has established a policy not to add corrosion inhibitors to its water supply. This policy was instituted after a large number of the residents in the District voiced concern over the effect of corrosion inhibitors on human health and requested that the District establish a policy not to add corrosion inhibitors to the District's water supply." We determine that the MUD's decision pertaining to treatment of its water to prevent or reduce corrosion is a discretionary act for which immunity is not waived.

 No Texas court has held that there exists a claim against a governmental entity supplying water for breach of implied warranty under sections 2.314 or 2.315 of the UCC. Section 2.314 provides in part that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." TEX. BUS. & COM.CODE ANN. § 2.314(a) (Vernon 1994). Appellants contend the water sold them is not merchantable because it is not "fit for the ordinary purposes for which such goods are used." TEX. BUS. & COM.CODE ANN. § 2.314(b)(3) (Vernon 1994). Section 2.315 provides that a seller warrants that goods sold will be fit for a particular purpose for which the goods are required.[7] Appellants' reliance on *Moody v.*

---

884–85 (Tex.App.—Houston [1st Dist.] 1986, no writ).

6. Section 101.056(2) of the TTCA provides in relevant part as follows:

This chapter does not apply to a claim based on: . . .
(2) a governmental unit's decision not to perform an act, or on its failure to make a decision on the performance or nonperformance of

an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

7. Section 2.315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there

*City of Galveston,* 524 S.W.2d 583 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) is misplaced. In *Moody,* the court specifically wrote that "it is unnecessary to determine whether or not the provisions of the Business and Commerce Code referred to herein [section 2.315] apply to a municipality engaged in furnishing water for compensation to its inhabitants." *Id.* at 587.

 Appellants argue that the MUD is not immune from claims brought under article 2 of the UCC because the definition section of the Code includes governmental entities within the meaning of a "seller" or "merchant." *See* TEX. BUS. & COM.CODE ANN. § 1.201(28) (Vernon 1994). A waiver of governmental immunity must be express, however. These cited definitions do not constitute an express waiver in clear and unambiguous terms. We conclude that the MUD retains its immunity for governmental functions as to appellants' implied warranty claims.

 In addition, we find no authority for waiver of immunity for appellants' claims for strict products liability. The only cited authority for such liability again is *Moody v. City of Galveston,* where the court held that "the doctrine of strict liability as set out in Sec. 402a of the Restatement of Torts is applicable to the City when engaged in the sale of water through a municipal waterworks system." 524 S.W.2d at 588. This conclusion was based however, on the fact that "the city was acting in a proprietary capacity and is not immune to liability in tort." *Id.* Therefore, because the MUD only performs governmental functions, immunity has not been waived and the holding in *Moody* is inapplicable.

We hold that the MUD established its defense of governmental immunity from liability on appellants' contract, tort, DTPA, products liability and UCC claims as a matter of law. The trial court did not err in

is unless excluded or modified under [section 2.316] an implied warranty that the goods shall be fit for such purpose.
TEX. BUS. & COM.CODE ANN. § 2.315 (Vernon 1994).

granting the summary judgments in favor of the MUD on these causes of action.

### Nuisance and Constitutional "Taking"— Exceptions to Immunity

 There are exceptions to governmental immunity that may be applicable under these facts. A municipality is liable for the creation or maintenance of a nuisance in the course of the non-negligent performance of a governmental function.[8] *See Gotcher v. City of Farmersville,* 137 Tex. 12, 151 S.W.2d 565, 566 (1941); *Shade v. City of Dallas,* 819 S.W.2d 578, 581 (Tex.App.—Dallas 1991 no writ). A nuisance is a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826, 829 (Tex.App.—Waco 1993, writ denied). To be classified as a nuisance within the exception to the doctrine of governmental immunity, the condition must in some way constitute an unlawful invasion of property or the rights of others beyond that arising merely from its negligent or improper use. *Id.* at 829–30; *see also Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980). For example, a city-owned sewage plant that emits odors onto another's land is a nuisance. *See, e.g., City of Abilene v. Downs,* 367 S.W.2d 153, 157–58 (Tex.1963).

 Pulte alleged a nuisance claim against the MUD in its individual capacity and as a member of the class. Its individual action was decided on the basis of res judicata because summary judgment was granted in favor of the MUD in the 1990 suit. Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984). A subsequent

8. Appellants incorrectly pleaded that immunity for their nuisance cause of action was waived by section 101.057(2) of the TTCA, which provides that the TTCA's waiver of immunity does not apply to intentional torts. *See Delaney v. University of Houston,* 835 S.W.2d 56, 58 (Tex.1992).

suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). To be entitled to summary judgment based on the defense of res judicata, the MUD had to establish that as a matter of law there was an identity of parties, subject matter, and issues. *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984).

■ To support its res judicata defense, the MUD provided certified copies of the petition, motion for summary judgment, and the orders of dismissal and for summary judgment in the 1990 suit. In the 1990 suit, although Pulte did not specifically allege nuisance, it claimed the water supplied by the MUD caused galvanized steel pipes it installed to excessively corrode and the MUD failed to treat the water to prevent the corrosion. This same allegation is made in the 1994 suit. In the 1990 suit, Pulte sought a declaration that the MUD would be responsible for all repairs to corroded pipes in the subdivision. Pulte makes the same claim for damages in this suit. The MUD asserted two grounds for summary judgment in the 1990 suit: (1) sovereign immunity and (2) there is no right of reimbursement between a settling tortfeasor and a nonsettling tortfeasor. The trial court granted summary judgment on the motion, without specifying on which of the two grounds, and Pulte did not appeal this ruling.

■ The MUD asserts the issues and subject matter are the same: the liability of the MUD for corrosion damage to pipes in the district allegedly caused by corrosive water supplied by the MUD. However, on closer examination, the first suit was a complaint seeking reimbursement for repairs made to one residence and requesting a declaration about liability for future damages. Thus, the first suit was not yet ripe for a declaratory judgment. The Declaratory Judgments Act gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication. *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex.1968); *see also K.M.S. Research Laboratories, Inc. v. Willingham*, 629 S.W.2d 173, 174 (Tex.App.—Dallas 1982, no writ) (holding that litigation of liability in a tort action is an improper use of declaratory judgment legislation). The issues in this suit could not have been litigated in the earlier action. In addition, this suit involves more than a claim for contribution that was sought in the 1990 suit. Consequently, Pulte's claims are not barred by res judicata. *TEIA v. Tobias*, 669 S.W.2d 742, 744 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (for res judicata to apply, the issue involved must be in existence and not merely prospective).

■ However, the MUD also alleged in its motion for summary judgment that appellants' nuisance claims are barred by the two-year statute of limitations. An action for damages based on nuisance is governed by the two-year period of limitations.[9] *See Stein v. Highland Park ISD*, 540 S.W.2d 551, 554 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.) (recognizing, however, that limitations is not a defense to a suit to abate a continuing nuisance as opposed to a suit for damages). The accrual of this two-year period depends upon whether the nuisance is temporary or permanent. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385, 387 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). A permanent nuisance is one that is "constant and continuous, not occasional, intermittent or recurrent." *Gulf Coast Sailboats*, 616 S.W.2d at 387. In contrast, temporary nuisances are "sporadic and contingent upon some irregular force." *Id.* The question of when a cause of action accrues is one of law for the court. *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex.App.—Houston [14th Dist.] 1994, no writ).

■ Here, appellants alleged a permanent nuisance. They asserted that the

9. The two-year limitations statute provides in relevant part that "a person must bring suit for trespass for injury to the estate or to the property of another … not later than two years after the day the cause of action accrues." TEX. CIV. PRAC & REM.CODE ANN. § 16.003(a) (Vernon 1997).

MUD "sold water on a continuous basis," it engaged in "continuous tortious conduct," and the MUD's "provision of defective water continued unabated" and it caused injuries at continuous times.[10] An action for permanent nuisance must be brought within two years of the discovery of the injury. *Bayouth*, 671 S.W.2d at 868. The cause of action accrues upon discovery of the first actionable injury rather than when the extent of the damages are fully ascertainable. *Id.; see also Gulf Coast Sailboats*, 616 S.W.2d at 387.

Appellants contend their nuisance cause of action is not barred because it is a "continuous tort." A continuous tort involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Arquette v. Hancock*, 656 S.W.2d 627, 629 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). For a continuing tort, "the cause of action is not complete and does not accrue until the tortious acts have ceased." *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 156 (Tex.Civ. App.—Dallas 1980, no writ). Appellants are complaining about the MUD's decision not to add corrosion inhibitors to the water, not about wrongful conduct that is repeated. For this reason, appellants' nuisance claim should not be treated as a continuous tort for limitations purposes, but rather as a permanent nuisance. *See, e.g., City of Temple v. Mitchell*, 180 S.W.2d 959, 964 (Tex.Civ. App.—Austin 1944, no writ) (holding that because the city showed no intent to change the manner of operation of its sewage plant, it was a permanent nuisance).

Limitations begins to accrue when the injury is first discovered. *See, e.g., Cornerstones MUD v. Monsanto Co.*, 889 S.W.2d 570, 577 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (the MUD's cause of action accrued no later than the date the district discussed filing suit at its board meeting);

*Bayou Bend Towers Council of Co–Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex.App.—Houston 14th Dist.1993, writ denied) (limitations begins as soon as the injury is discovered and not when the exact cause and all parties are discovered). The evidence is uncontroverted that Pulte was aware that the nuisance, the corrosive water, was causing damage to residential water pipes in 1989. Pulte sent its demand letter to the MUD in November 1989. In May 1990, Pulte filed the first suit in an attempt to stop the alleged nuisance. Pulte did not assert its nuisance allegation against the MUD until April 1994, over four years after it first became aware of its claimed injury.

As to the class claims, filing a class action tolls the running of the statute of limitations for all members of the class as to the named defendants. *Mayfield v. San Jacinto Sav. Ass'n*, 788 S.W.2d 119, 121 (Tex. App.—Houston [14th Dist.] 1990, writ denied). The class first sued the MUD on August 22, 1994. The class members acknowledged in answers to interrogatories that the problem arose in 1989. Class representative Loyd attended a board meeting in mid–1991 where the corrosion problem was discussed. Even if we accepted this later accrual date, more than two years elapsed before the class alleged their nuisance claim against the MUD in 1994. Likewise, appellants' contention that their claims relate back to their Second Amended Petition in March 1994 are not availing. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 1997) (amended pleadings relate back to earlier pleadings for limitations purposes unless the amendment is "wholly based on a new, distinct or different transaction or occurrence."). We hold that appellants' nuisance claim is barred by limitations.

Appellants also allege the MUD violated article I, section 17 of the Texas Constitution because the damage to their homes is a "taking" of their property.[11] The

---

10. While appellants alleged the corrosive water "continues to damage the Plaintiff's plumbing systems in its homes resulting in *temporary* physical damage to the property" [emphasis added], the summary judgment evidence established that the damage was only temporary in the sense that

appellants' pipes have been repaired or replaced. Appellants agree the two-year limitations period is applicable to their nuisance claim against the MUD.

11. "No person's property shall be taken, damaged or destroyed for or applied to public use

power of the State to take, damage, or destroy private property for public use is subject to the right of the owner thereof to adequate compensation under article I, section 17 of the Texas Constitution. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (Tex. 1941). An action for just compensation for property taken for public use under the Texas Constitution is a limited exception to the doctrine of sovereign immunity. *See Steele,* 603 S.W.2d at 791.

■■■■ Whether there has been a taking is a question of law. *Woodson Lumber Co. v. City of College Station,* 752 S.W.2d 744, 746 (Tex.App.—Houston [1st Dist.] 1988, no writ). A direct physical invasion of property is not required under the constitution before a landowner may be entitled to damages for the taking or damaging of property. *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex. 1965). Appellants assert that water, drainage and other such districts are responsible for damages or injury to property inflicted in the performance of their functions primarily for the benefit of the people within the boundaries of the district. *See Nueces County Drainage & Conservation Dist. No. 2 v. Bevly,* 519 S.W.2d 938, 946 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).[12]

■■■■ To recover under a theory that property has been taken by a governmental entity without adequate compensation, referred to as inverse condemnation, a plaintiff must establish that (1) the government entity intentionally performed certain acts; (2) that resulted in the taking of the property; (3) for public use. *City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.). A "public use" concerns the customers of the entire district, as distinguished from a particular individual. *Bay Ridge Utility Dist. v. 4M Laundry,* 717 S.W.2d 92, 101 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Property is taken for a public use only when there results to the public some definite right or use

in the undertaking. *Id.; see also, e.g., City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978) (holding that the City of Austin's decision to deny a waterway permit to preserve a public scenic easement was a taking because the plaintiff was required to bear all the cost for the community benefit). If the damage is clearly attributable to negligent acts of the agents of the governmental unit, there is no liability under the rationale that a damaging from unintended and negligent acts results in no benefit to the public. *Texas Highway Dept. v. Weber,* 147 Tex. 628, 219 S.W.2d 70, 72 (1949). Except in isolated instances, judicial decisions have narrowed the meaning of "public use" to those situations in which the damages are incident to the construction and operation of a public work. *Steele,* 603 S.W.2d at 790.

■■■ The MUD moved for summary judgment on the ground that appellants cannot satisfy the public use element of an inverse condemnation claim. To support this argument, the MUD cites *Woodson Lumber,* where a landowner sued the city for damages for inverse condemnation based on the city's refusal to approve proposed subdivision plats. The court held that summary judgment was proper on the taking claim because the plaintiff had not produced any evidence that the city was attempting to obtain a benefit for the public, which should have been accomplished through eminent domain. 752 S.W.2d at 747.

■■■ "Damaging" of property on account of "public" use, required to be compensated under article I, section 17 of the Texas Constitution, includes injury from the construction of public works and their subsequent maintenance and operation. *Hidalgo County Water Imp. Dist. No. 2 v. Holderbaum,* 11 S.W.2d 506, 507 (Tex. Comm'n App.1928). In this case, the summary judgment evidence shows that the residents of the district did not want corrosion inhibitors added to the water. Therefore, the MUD's policy may

·without adequate compensation being made unless by the consent of such person...." Tex. Const. art. I, § 17.

**12.** Every decrease in market value is not compensable, however. Recovery under article I,

section 17 is permitted only if the injury is not one suffered by the community in general. *Felts v. Harris County,* 915 S.W.2d 482, 484 (Tex. 1996).

have been enacted to benefit the public, that is, the members of the district. Viewing the evidence in a light most favorable to appellants, we find a fact question exits as to whether the MUD's decision not to add corrosion inhibitors to the water was done for public use. *See Steele,* 603 S.W.2d at 791 (reversing a summary judgment granted the city on the basis of governmental immunity in plaintiffs suit for damages for the intentional destruction of their home by police officers attempting to recapture three escaped convicts, and holding that plaintiffs had stated a takings claim and were entitled to the opportunity to make proof that the city's officers, acting with authority or color of authority, set the house on fire and that its subsequent destruction was for a public use).

■■■ The failure to allege a taking for public use was the only ground raised in the MUD's summary judgment motion to defeat appellants' constitutional taking claim.[13] Summary judgment may only be affirmed on grounds specifically raised in the motion. *McConnell v. Southside ISD,* 858 S.W.2d 337, 341 (Tex.1993). Accordingly, we must sustain that portion of appellants' point of error 1A on their constitutional taking claim. In all other respects, appellants' point of error one is overruled as to the claims alleged against the MUD.

## Claims against ECO

In their second point of error, appellants contend the trial court erred in granting the summary judgments in favor of ECO.

Appellants also alleged ECO breached a contract with them by failing to provide water suitable for use in their plumbing systems. In addition, they alleged breach of warranties of merchantability and fitness under article 2 of the Texas UCC, and that the water was defective. Later, appellants added claims for negligence and numerous violations of the DTPA. ECO pleaded a limitations defense to the later added negligence and DTPA claims. ECO first moved for summary judgment on three grounds: (1) it had no contract with appellants; (2) appel-

lants were not third-party beneficiaries of the MUD/ECO contract; and (3) ECO sold only services and no sale of goods took place. ECO supplemented its motion to assert its limitations defense on the later added claims, but the trial court declined to enter judgment on those issues. Accordingly, the first partial summary judgment for ECO in this action disposed of only appellants' contract and UCC claims. Appellants later added nuisance and products liability claims against ECO after they brought the MUD into the suit. ECO then filed its second motion for summary judgment, asserting numerous grounds, on all remaining claims alleged by the class.

## Immunity

■■■ First, we address ECO's contention that the claims against it are also barred by immunity. ECO adopted and incorporated the same arguments raised by the MUD and claims it is entitled to the same protection. A government employee performing a governmental function can be charged with no greater responsibility than that imposed upon the governmental unit. *Davis v. Mathis,* 846 S.W.2d 84, 88 (Tex.App.—Dallas 1992, no writ). Official immunity inures to all governmental employees who perform discretionary functions in good faith and within their authority. *DeWitt v. Harris County,* 904 S.W.2d 650, 652 (Tex.1995). Thus, the elements of the defense of official immunity are (1) the performance of a discretionary function (2) in good faith (3) within the scope of the employee's authority. *City of Lancaster,* 883 S.W.2d at 653.

■■■ ECO concedes it is not a governmental "employee," but argues that immunity applies because it is the MUD's agent. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(1) (Vernon 1997). The act specifically excludes an independent contractor, however, "who performs tasks the details of which the governmental unit does not have the legal right to control." *See id.* The president of the MUD's board stated in his

---

13. Therefore, we do not address the MUD's argument that appellants negated their taking claim because they pleaded that the MUD exceeded its

authority. *See Firemen's Ins. Co. v. Board of Regents of the Univ. of Texas Sys.,* 909 S.W.2d 540, 543 (Tex.App.—Austin 1995, writ denied).

affidavit that "ECO Resources, Inc. is not an employee of the District. ECO Resources, Inc. is an independent contractor who provides operating services." ECO denied it was an independent contractor, but failed to offer supporting summary judgment proof negating this status. There is summary judgment evidence in the record that the MUD board made the decision whether to add chemicals to the water to treat the corrosiveness, which tends to demonstrate control over ECO, but this evidence does not establish as a matter of law that ECO was a governmental agent entitled to immunity rather than an independent contractor. Moreover, ECO did not allege or establish that it performed discretionary functions in good faith. Therefore, we must conclude that ECO failed to establish its entitlement to the affirmative defense of immunity as a matter of law.

### Negligence

In its motion for summary judgment, ECO argued it is not liable for negligence because it owed no duty to the class as a matter of law. In addition, ECO alleged its conduct was not a proximate cause of appellants' damages. Appellants' only negligence allegation against ECO is that ECO "failed to exercise that degree of care that a person engaged in the business of providing water treatment services of ordinary prudence would have exercised under the same or similar circumstances."

■■■ The existence of a legal duty is a question of law for the court to decide from the surrounding facts. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The factors to be considered in determining whether a legal duty exists include the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, the consequences of placing the burden on the defendant, and whether a right to control exists concerning the actor whose conduct precipitated the alleged harm. *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex. 1993).

■■■ ECO claims it was not responsible for the condition about which the class complains, and that its lack of control is dispositive of the duty question. We agree. There is no duty to warn of or correct a condition unless the defendant caused or created the condition. *See Barefield v. City of Houston,* 846 S.W.2d 399, 404 (Tex.App.— Houston [14th Dist.] 1992, writ denied). The undisputed summary judgment proof shows ECO did not create the allegedly corrosive condition of the water. The evidence shows ECO does not own the water and does not have authority to decide how to treat the water.

■■■ The right of control is an important factor in determining the existence of a legal duty, and it is often the deciding factor. *See, e.g., Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex.1995) (per curiam) (the defendant owed no duty because he had no control over the premises where the victim was sexually abused); *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 199 (Tex.1995) (the defendant realty company did not have specific control over security at the parking garage where a condominium resident was attacked and kidnapped and had no legal duty to protect the victim from the criminal conduct of a third party). ECO had no control over the natural forces that created the alleged corrosive condition of the water. In addition, ECO contends it had no control over the decision whether to add chemicals to the water. As support for this contention, it provided deposition testimony from the MUD board's former president who testified that the board of directors instructed ECO as to what chemicals were to be added to the water. The decision on whether to add chemicals was solely for the MUD's board, and after public meetings, the board adopted a policy not to add more chemicals.

ECO presented summary judgment evidence to establish that the MUD's board hired consultants to investigate the pipe problem after Pulte representatives brought the problem to its attention. The deposition testimony of one of the consultants, Walter Rothrock of CH & A Corporation, explained that tests of the water showed that two of the three wells in the district showed corrosion rates higher than that recommended by

certain private companies. Rothrock further testified, however, that any corrosive tendency of the water existed in the ground before any treatment and was not a result of ECO's treatment of the water. The report issued by CH & A concluded that "although the potable water supply used by MUD No. 81 exceeds all federal, state and local standards, a corrosion potential still exists. This is due to the relatively high pH hardness and dissolved solid levels found." Another report issued after an analysis of the MUD's water concluded "[t]he water from these wells complies with all Texas Department of Health and the U.S. Environmental Protection Agency (EPA) standards for drinking water and it always has." Another consultant, Andrew Sansum, concurred that any "corrosivity" problem existed before the water left the ground and thus had nothing to do with ECO's treatment. He also testified that the water met all government requirements.

CH & A advised the MUD board that chemicals could be added to the water to make it less corrosive and MUD board members testified that Pulte requested that these chemicals be added. After several public meetings at which the majority of the residents stated "they did not want anything added to the water, period," the board denied Pulte's request. Named class representative Loyd confirmed in his deposition testimony that most of the residents attending two board meetings he attended were opposed to adding chemicals to the water. The board members testified that the MUD board sold and controlled the water and decided what chemicals would be put in the water and any decision concerning adding more chemicals was solely for the MUD board. John Sachs, Pulte's vice-president, acknowledged that the MUD controlled the treatment of the water when he testified that at meetings of the MUD board, "we asked them, 'why don't you instruct ECO to treat the water or to change the way that they were treating it?'"

ECO provided summary judgment evidence in the form of an affidavit from one of its representatives that the only tests ECO performed on the water were to monitor the levels of chlorine for disinfection purposes and it did not determine the water's effect on any plumbing or pipes. The MUD board did not request ECO to perform any tests after it became aware of complaints about pipe damage. Instead, the board hired an outside consultant.

Wayne Cherry, vice-president of the company that has provided civil engineering services to the MUD since 1974, testified that ECO takes its directions from the board, which has the "ultimate responsibility to decide whether they were going to add chemicals to the water." He testified ECO had no authority to add chemicals unilaterally.

Appellants contend ECO had the authority to decide the details of implementing the corrosion regime for the district's water. The cited summary judgment evidence does not support this contention, however. Appellants refer to evidence showing that the district's water was hard, with a high pH level, and that the addition of phosphates did not inhibit corrosion. Appellants also contend ECO and the MUD were part of a joint enterprise. *See Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718–19 (Tex. 1995) (recognizing that a joint enterprise requires an express agreement, a common purpose, a common pecuniary interest, and an equal right to control the enterprise). The summary judgment evidence does not support this contention. Appellants have failed to raise a fact question on the existence of a legal duty. We hold that ECO owed no duty to appellants to correct the alleged corrosiveness in the district's water as a matter of law.

### DTPA Claims

The class alleged misrepresentations and failure to disclose, unconscionable actions, and breach of warranty under the Texas Deceptive Trade Practices Act (DTPA). *See* TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 1987 & Supp.1997). ECO moved for summary judgment on the grounds that it committed no deceptive act or practice and that its conduct was not a producing cause of appellants' damages.

 Liability for deceptive trade practices requires the plaintiff to establish

some misrepresentation or failure to disclose constituting deception by the defendant. One cannot be held liable under the DTPA for failure to disclose facts he does not know. *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982). The evidence shows that ECO did not know of the alleged condition of the water until Pulte made its claims to the MUD board.

Deposition testimony from Pulte's vice president for finance, John Sachs, and named plaintiffs Green and Loyd was included in the summary judgment evidence. This testimony established that they never spoke to ECO about the plumbing problems and knew of no representations made by ECO. Pulte's representative also testified by deposition that he could recall no representations ECO made to Pulte and did not remember having any contact with anyone from ECO. Sachs testified that Pulte was not even aware of ECO's existence until Pulte contacted the MUD about the pipe leaks. He could provide no facts to support the conclusory DTPA allegations in appellants' pleadings. He knew of no representations by ECO to Pulte, and no one from Pulte spoke to ECO personnel until after the pipe problems arose in 1989. The only information Sachs said should have been disclosed was that "the water was aggressive," but he had no information about when ECO learned of the alleged "aggressive" nature of the water. Class representative Green testified that "all [ECO] did was take water samples, so I have no reason to criticize them for that." The evidence also shows that ECO never held itself out as anything other than a contractor for the MUD.

■ ECO's Environmental Affairs manager furnished an affidavit stating that other than advising the MUD board that the water was safe for human consumption and met all federal and state standards as determined by the Texas Water Commission and the Texas Department of Health, ECO never made any representations concerning the water in the district. ECO's affidavit also established no warranties were made, and appellants did not controvert this evidence. A summary judgment may be based on uncontroverted evidence from an interested witness if that evidence is clear, positive and direct, is oth-

erwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R. CIV. P. 166a(c). Appellants did not controvert the affidavit. We hold ECO established there is no liability for breach of warranty under the DTPA. *See La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 565 (Tex.1984) (holding that the DTPA creates no new warranties).

■ Appellants point to their pleadings and their own answers to interrogatories to attempt to raise a fact question as to misrepresentations made by ECO. It is well established the pleadings are not summary judgment evidence. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). In addition, interrogatory answers may only be used against the answering party. TEX.R. CIV. P. 168(2). Furthermore, these allegations are mere conclusions without specific statements and are therefore insufficient to create a fact issue. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

■ An unconscionable action must take advantage of a consumer to a grossly unfair degree. *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985). Because the evidence shows ECO made no misrepresentations or warranties, did not know about the alleged water condition until Pulte complained, and had no authority to implement the changes appellants contend should have been made, ECO could not have engaged in unconscionable conduct.

We hold that ECO established its entitlement to judgment on appellants' DTPA claims as a matter of law.

### Nuisance

■ Appellants claim that ECO is liable for maintaining a nuisance because it did not change the water treatment. ECO moved for summary judgment on the ground that ECO did not control the water or make the decision whether to add anti-corrosion chemicals. The Texas Supreme Court has held that where the conduct allegedly constituting a nuisance is controlled by a third party alone, other defendants are not liable. *Hindman v. Texas Lime Co.,* 157 Tex. 592,

305 S.W.2d 947, 948–49 (1957) (where a lessee's method of operating a factory or processing plant alone accounted for the damage sustained, the owner, being free of fault, was not jointly liable for nuisance with the lessee-operator). The uncontroverted evidence cited earlier shows that ECO had no authority to add chemicals without approval by the MUD's board. To constitute a nuisance, "the danger must be inherent in the thing itself." *Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 223 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Complaints that damages suffered resulted from the acts of employees or contractors in "operating the alleged nuisance" do not state a legally viable nuisance claim. *Id.* Here, the MUD owned the water and ECO operated the system. Therefore, it has no liability for the damage allegedly caused by the MUD's decision not to add corrosion inhibitors to the district's water.

We conclude that ECO is entitled to summary judgment on appellants' nuisance cause of action as a matter of law.

### Product Liability

■ ECO moved for summary judgment on appellants' product liability cause of action on the ground that the product liability theory of recovery does not apply to ECO under these facts because it was not a manufacturer, seller or supplier of any product. ECO also asserted that water is not a defective product.

■ Section 402A of the RESTATEMENT (SECOND) OF TORTS articulates the doctrine of strict liability as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A (1965). Although phrased in terms of sellers, it is not necessary that the defendant actually sell the product; the defendant need only be engaged in the business of introducing the product into channels of commerce. *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996).

■ The summary judgment evidence establishes that ECO was not a manufacturer, seller or supplier of any product. ECO was not in the business of selling water but was instead a contractor for services to the MUD under a service contract. The vice president of marketing for ECO testified by affidavit that:

ECO Resources is a service company which provides water treatment and other services to entities such as municipal utility districts. ECO resources does not own, and has never owned, any interest in the groundwater or the treatment facilities of any utility district, including Harris County Municipal Utility District No. 81 ("M.U.D.81"). ECO Resources does not sell water to residential or commercial users....

In addition, the contract between the MUD and ECO provided that ECO "is in the business of operating, maintaining, and managing waterworks and sewer systems." Accordingly, ECO did not supply the water, which was owned, sold and controlled by the MUD. A contractor selling services is not liable for alleged defects in products used in performing the service. *Barham v. Turner Constr. Co.*, 803 S.W.2d 731, 738 (Tex.App.—Dallas 1990, writ denied).

■ If a product contains dangerous ingredients which are natural or inherent, courts generally hold that the product is not defective. *Helene Curtis Indus., Inc. v. Pruitt*, 385 F.2d 841, 855 (5th Cir.1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). In this case, the uncontroverted summary judgment evidence showed that the water was corrosive in its natural state. In contrast, in *Moody v. City of Galveston*, water was found "defective" because it contained flammable gas. 524 S.W.2d at 589.

We hold that the trial court correctly granted summary judgment on appellants' product liability claims.

## UCC Claims

■ ECO moved for summary judgment on appellants' causes of action under article 2 of the Texas UCC because it did not engage in a sale of goods under the act. The UCC applies only to transactions between parties involving the sale of goods. TEX. BUS. & COM.CODE ANN. § 2.102 (Vernon 1994). It is immaterial whether we consider water to be "goods" under the code, because it is undisputed that the MUD, not ECO, owned and sold the water.[14] ECO's vice president for marketing furnished an uncontroverted affidavit, quoted above, establishing that ECO is a service company only and it does not sell water.

■ In addition, the MUD/ECO contract was a service contract and the UCC does not apply. *See Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574 (Tex.1991) (holding that the UCC article governing sale of goods did not apply to a telephone company's sale of yellow pages advertising). The summary judgment evidence was uncontroverted that the contract, entitled a "Service Contract" provided:

> The District is desirous of obtaining services for the competent operation, maintenance, and management of its waterworks and sewage collection system. Servicing company is in the business of operating, maintaining, and managing waterworks and sewer systems. . . .

We hold that the trial court correctly granted summary judgment on appellants' claims for violation of the Texas UCC.

## Contract Claims

ECO moved for summary judgment on appellants' contract claims on the grounds that it had no contract with appellants, and that appellants were not third party beneficiaries of the contract ECO had with the MUD.

[89] In *Moody,* a suit for injuries from defective water furnished by the city, the court found that there was no written or oral contract for a city to supply water to its residents, but instead there was a continuing offer to sell water, which offer was accepted by drawing water through the water meter. 524 S.W.2d at 586. We likewise have found that the MUD had no implied contract with appellants to provide water that did not corrode their pipes. Accordingly, ECO, the MUD's service contractor, had no such implied contract with appellants.

■ We also find that appellants are not third-party beneficiaries of the MUD/ECO contract. Parties are presumed to contract only for their own benefit. *Greenway Park Townhomes Condominium Ass'n, Inc. v. Brookfield MUD,* 575 S.W.2d 90, 91 (Tex. Civ.App.—Houston [14th Dist.] 1978, no writ). A third party can only recover if the contracting parties intended to benefit that party, "and only if the contracting parties entered into the contract directly and primarily for the third party's benefit." *Dorsett Bros. Concrete Supply, Inc. v. Safeco Title Ins. Co.,* 880 S.W.2d 417, 421 (Tex.App.—Houston [14th Dist] 1993, writ denied). The fact that a person is directly affected by the parties' conduct, or that he "may have a substantial interest" in a contract's enforcement, does not make him a third party beneficiary. *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577 (Tex.App.—Houston [14th Dist], writ ref'd n.r.e.).

In *Greenway Park,* the Brookfield MUD contracted with a builder to provide water and sewer service to an area under development. *Greenway Park,* 575 S.W.2d at 90. The contract provided that the builder wanted to secure a water supply for future water users and the MUD had sufficient capacity to serve those users. *Id.* at 91. The builder ultimately filed bankruptcy, causing the wa-

14. Section 2.105 provides in relevant part that: "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action.
TEX BUS & COM CODE ANN. § 2.105(a) (Vernon 1994).

ter service to the development to be disconnected. The homeowner's association sued the MUD for breaches of contract with the builder. This court held that the homeowner's association was not a third party beneficiary of the contract as a matter of law. *Id.*

According to its terms, this contract was made for the benefit of the two contracting parties. It creates no duties to third persons, it grants no rights of enforcement to any third parties, it contains no suggestion of any intent to benefit third parties, and it prohibits assignments of rights without the other party's prior consent. The fact that appellants may have received some benefit from the contract is insufficient as a matter of law to state a third party claim.

■ Even if appellants were third party beneficiaries, ECO did not breach the contract with the MUD. The summary judgment evidence shows that it complied with applicable laws, according to the contract, by providing water that met all government standards. In addition, the evidence shows that the corrosive tendency of the water was present before any treatment by ECO.

We conclude that ECO established its entitlement to judgment on all of appellants' causes of action as a matter of law. Accordingly, we overrule appellants' point of error two.

■ Finally, we address the MUD's cross-point in which it seeks damages against appellants for bringing this appeal without sufficient cause. *See* TEX.R.APP. P. 45 (permitting an appellate court to assess damages when an appeal is frivolous).[15] As is readily apparent from the lengthy discussion of the points of error in this case, the issues presented are complex. Moreover, we have sustained one of appellants' points of error in part. Consequently, we decline to impose sanctions against appellants for pursuing their right of appeal.

In conclusion, we reverse that portion of the summary judgment dated June 14, 1995, on appellants' constitutional taking claim against the MUD. In all other respects, we affirm the summary judgments granted by the trial court.

---

15. *See* former TEX.R.APP. P. 84.