**Affirmed in part; Reversed and Remanded in part; and Opinion filed July 24, 2014.**



In the

# Fourteenth Court of Appeals

### NO. 14-13-00890-CV

## FRANK AND SHELLEY THORNTON, Appellants

## V.

## NORTHEAST HARRIS COUNTY MUD 1, Appellee

**On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 996,704**

## O P I N I O N

Appellee Northeast Harris County MUD 1 filed an eminent domain suit against appellants Frank and Shelley Thornton. The Thorntons brought counterclaims for inverse condemnation, nuisance, trespass, and negligent trespass. MUD filed a plea to the jurisdiction, arguing that there was no legislative waiver of its governmental immunity and that the Thorntons' counterclaims did not give rise to a constitutional taking sufficient to waive immunity because they cannot show

MUD intended to contaminate their property and that alleged contamination of their property serves a public use.

MUD also filed traditional and no-evidence motions for summary judgment. In its traditional motion, MUD argued that there was no legislative waiver of its governmental immunity and that the Thorntons' counterclaim for negligent trespass fails as a matter of law because negligent conduct cannot give rise to a constitutional taking sufficient to waive immunity. In its no-evidence motion, MUD asserted that the Thorntons' counterclaims for inverse condemnation, nuisance, and trespass are barred by governmental immunity "[i]n the absence of an intentional act resulting in the taking of private property for public use." Specifically, MUD asserted that the Thorntons had not offered any evidence of MUD's intent to contaminate or erode their property, and of how contaminating or eroding their property serves a public use.

The trial court did not rule on MUD's plea to the jurisdiction but granted its motions for summary judgment. The Thorntons noticed their appeal from the trial court's order granting MUD summary judgment as to the Thorntons' counterclaims. MUD filed an emergency motion for involuntary dismissal of appeal, which we carried with the case. After concluding that we have jurisdiction over this interlocutory appeal, we deny MUD's motion to dismiss, and affirm in part, reverse in part, and remand.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The developer of a 380-acre master planned development sought approval from MUD of its plan to mitigate the impact from its stormwater drainage. MUD adopted the proposed drainage and retention plan, and the developer began construction work to tie into an existing ditch on the Thorntons' property in February 2011. However, an investigation revealed that MUD did not have a

record easement for the existing drainage ditch. In July 2011, MUD filed an eminent domain suit to acquire a 0.6569-acre drainage easement on the Thorntons' 1.607-acre tract of land. A statutory damages hearing was held, and the court-appointed special commissioners awarded the Thorntons approximately $2300 in damages.

The Thorntons filed an objection to the award. When the Thorntons refused to allow MUD's contractors back onto their property to complete MUD's project, MUD filed an emergency motion for writ of possession, and the trial court granted immediate possession of the easement to MUD.

MUD moved for partial summary judgment with regard to its "right to take," which the trial court granted. In the meantime, trial had been set for the remaining compensation issue. MUD then moved for no-evidence summary judgment, asserting that the Thorntons had no evidence as to market value. The Thorntons responded and attached exhibits, to which MUD filed objections. The trial court granted in part and denied in part MUD's objections, but denied MUD's motion for no-evidence summary judgment.

In July 2013, the Thorntons filed a supplemental answer and original counterclaim asserting a claim for inverse condemnation under article I, section 17, of the Texas Constitution and for permanent injunction related to alleged lead contamination of their property based on the use of toxic soil during the drainage construction project. They later amended to add claims for nuisance, trespass, and negligent trespass.

MUD filed a plea to the jurisdiction, arguing that it retained its governmental immunity from the Thorntons' counterclaims because they cannot show the requisite constitutional taking elements of intent and public use. The Thorntons responded.

3

Within a single document, MUD also filed traditional and no-evidence motions for summary judgment, arguing that it enjoyed governmental immunity, that the Thorntons' negligent trespass claim failed as a matter of law to give rise to a constitutional taking sufficient to waive immunity, and that the Thorntons had presented no evidence of the requisite constitutional taking elements of intent and public use.[1]  MUD did not attach any evidence to its motions.  The Thorntons again responded and attached exhibits.  Although the Thorntons asserted MUD's no-evidence motion was improper because it required them to marshal all of their evidence, they also argued that they had produced sufficient evidence to raise a fact issue on intent and public use.  MUD did not reply to or file any objections to the Thorntons' evidence.

On September 30, 2013, the trial court held a hearing on MUD's plea and summary judgment motions.  At the hearing, both sides indicated they would seek immediate appeal of adverse rulings.  On October 6, 2013, the trial court granted MUD's traditional and no-evidence motions for summary judgment.  Within its order, the trial court indicated that per "stipulations" it was incorporating two particular prior evidentiary rulings, granting MUD's motion to strike, and striking the portion of the summary judgment record as to which it sustained MUD's objections.  The trial court did not rule on MUD's plea to the jurisdiction, and on October 9, 2013, signed an order denying the Thorntons' request for expedited oral hearing on MUD's plea.

This interlocutory appeal followed.  In this court, MUD filed an emergency motion for involuntary dismissal of appeal, arguing that the Thorntons are not entitled to interlocutory appeal of the trial court's summary judgment order under

---

[1] MUD did not address the Thorntons' request for permanent injunction either in its plea to the jurisdiction or its summary judgment filing.

4

Texas Rule of Civil Procedure section 51.014(a)(8). We carried this motion with the case.

On appeal, the Thorntons argue the following. First, as a threshold matter, they contend that this court has interlocutory jurisdiction because this is an appeal of a summary judgment order based on governmental immunity. Second, the Thorntons argue that the trial court erred in excluding certain portions of their summary judgment evidence. Third, they contend that the trial court erred in granting MUD's motions for traditional and no-evidence summary judgment. The Thorntons argue that negligent trespass is actionable against the government. With regard to MUD's no-evidence motion, the Thorntons assert that a no-evidence summary judgment is an improper vehicle to challenge jurisdictional facts, and that, in any event, their evidence raised a genuine fact issue as to whether MUD acted intentionally with regard to the lead contamination and as to whether MUD's conduct served a public use.[2] Fourth, the Thorntons request that they be allowed to replead any pleading deficiencies.

## II.   JURISDICTION

As a threshold issue, we must determine whether we have appellate jurisdiction over this interlocutory appeal. We conclude that we do.

Pursuant to section 51.014(a)(8), a person may appeal and this court may review an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008 & Supp. 2013). Although the Texas Supreme Court recognizes section

---

[2] Despite MUD's reference to erosion within its no-evidence summary judgment motion, the Thorntons indicate, and their pleadings confirm, that they do not complain about erosion, but rather about the lead contamination. They allege that MUD created a nuisance "by the introduction of contaminated soil to" their property and committed trespass by "dumping contaminated soil onto their property."

51.014(a) is a narrow exception to the general rule that only final judgments are appealable, it has "construed 'plea to the jurisdiction' in [s]ection 51.014(a)(8) to refer to a substantive claim of immunity rather than to a particular type of procedural vehicle." *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 666 (Tex. 2012) (per curiam). The availability of an interlocutory appeal will not be decided by the form or caption of a pleading, but rather will be determined by the substance of the motion to determine the relief sought. *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999). An interlocutory appeal may be had when a trial court grants or denies a governmental unit's challenge to subject matter jurisdiction, "irrespective of the procedural vehicle used." *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).[3] Thus, where the record does not contain an order granting or denying a plea to the jurisdiction, but does include an order granting or denying a motion for summary judgment in which the movant challenged the trial court's jurisdiction, an interlocutory appeal may be taken under subsection (a)(8). *See Lazarides v. Farris*, 367 S.W.3d 788, 796–97 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Here, the Thorntons alleged in their petition that MUD's taking, damaging, and destroying their property was in the nature of an inverse condemnation violating article I, section 17, of the Texas Constitution, i.e., a constitutional taking. They also brought counterclaims for nuisance, trespass, and negligent trespass, all based on MUD's alleged taking.

---

[3] MUD relies on *Long* for the proposition that by reaching the merits of the Thorntons' counterclaims on summary judgment, the trial court implicitly denied MUD's plea to the jurisdiction. In *Long*, where the sheriff's summary judgment motion challenged jurisdiction and the trial court went on to address the merits of the plaintiff's declaratory judgment claim and ruled in her favor on cross-summary judgment, the Texas Supreme Court construed the trial court's summary judgment ruling as an implicit denial of the sheriff's challenge to the court's jurisdiction. 207 S.W.3d at 339–40. In contrast, here, there was no implicit denial. MUD's summary judgment motions similarly challenged jurisdiction and the trial court ruled in MUD's favor, so functionally the ruling granted MUD's jurisdictional challenge.

MUD filed a plea to the jurisdiction, arguing that there was no legislative waiver of its governmental immunity; it only could be sued for claims rising to the level of a constitutional taking under article I, section 17; and the Thorntons "cannot show" that MUD intentionally contaminated their property and how the alleged contamination could serve a public use. MUD thus asserted: "In the absence of an intentional act resulting in the taking of private property for public use, [the Thorntons'] claims . . . are barred by governmental immunity."

MUD also filed "Traditional and No-Evidence Motions for Summary Judgment on Defendants' Counterclaims." In the traditional portion of its combined filing, MUD argued that there was no legislative waiver of its governmental immunity and that the Thorntons' claim for negligent trespass failed as a matter of law because a constitutional taking sufficient to waive immunity cannot be based on a theory of negligence. Within the no-evidence portion, MUD again argued that the Thorntons "may sue [MUD] only if the alleged acts rise to the level of a constitutional taking under Article I, Section 17," repeating that "[i]n the absence of an intentional act resulting in the taking of private property for public use, [the Thorntons'] claims . . . are barred by governmental immunity." MUD then asserted that the Thorntons had failed to produce any evidence of certain essential elements of a constitutional taking—MUD's intent to contaminate or erode the Thorntons' property and how such alleged contamination or erosion serves a public use.

Although MUD styled its later pleading as motions for summary judgment, separated out the negligent trespass claim in the traditional motion, and attacked the rest of the Thorntons' counterclaims within the procedural vehicle of a no-evidence motion, after comparing the substance of MUD's plea with the substance of its summary judgment motions, we conclude that MUD presented essentially the

7

same immunity-based arguments with respect to the Thorntons' counterclaims in both filings. *See City of Houston v. Atser, L.P.*, 403 S.W.3d 354, 359 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (op. on reh'g) (discussing *Jones* and concluding city's later filing styled as summary judgment motion "merely restated the same grounds" as in its earlier plea to the jurisdiction—therefore, where city had failed to timely appeal denial of plea, it could not appeal later denial of summary judgment under section 51.014(a)(8)).

Despite the lack of a ruling on MUD's plea, the Thorntons can appeal and this court has interlocutory jurisdiction to review the trial court's order granting MUD summary judgment on immunity-based grounds. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *Lazarides*, 367 S.W.3d at 796–97 (concluding interlocutory jurisdiction existed over denial of public official's summary judgment motion in which he made jurisdictional challenges despite lack of ruling on his earlier plea). Therefore, we deny MUD's emergency motion for involuntary dismissal and proceed to the merits of the Thorntons' interlocutory appeal.

## III.   ANALYSIS

Although this is an appeal from a summary judgment order, the trial court made its ruling in the context of MUD's jurisdictional challenge based on governmental immunity, so we apply the standards of review and the burdens of proof applicable to jurisdictional pleas. *See Lazarides*, 367 S.W.3d at 797.

## A. Standard of review

Governmental "immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).[4]   The

---

[4] MUD is a political subdivision of the State created pursuant to article XVI, section 59,

8

jurisdictional challenges in MUD's summary judgment motions raise a question of law reviewed de novo on appeal. *See Lazarides*, 367 S.W.3d at 797. We have jurisdiction to review a trial court's order that granted or denied summary judgment as to grounds in which the governmental entity challenged the trial court's subject matter jurisdiction. *See id.*

A summary judgment motion challenging jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *See id.* When such a motion challenges the sufficiency of the pleadings, we determine whether the plaintiff has met his burden by pleading facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In doing so, we construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively establish an incurable defect, the plaintiff should be afforded an opportunity to replead. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226–27. However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction, then such a motion may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

If the plaintiff has alleged sufficient jurisdictional facts, the governmental entity also may challenge the existence of the jurisdictional facts. *See id.* The standard of review for a jurisdictional plea or motion based on evidence "mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, we credit as true all evidence favoring the nonmovant

of the Texas Constitution, operating under chapters 49 and 54 of the Texas Water Code. The doctrine of governmental immunity protects political subdivisions such as MUD from lawsuits seeking damages. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *MBP Corp. v. Bd. of Trs. of Galveston Wharves*, 297 S.W.3d 483, 487 (Tex. App.— Houston [14th Dist.] 2009, no pet.).

9

and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* The movant must assert the absence of subject matter jurisdiction and present conclusive proof that the trial court lacks subject matter jurisdiction. *Id.* Proof is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant discharges this burden, the nonmovant then must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *See Miranda*, 133 S.W.3d at 228. If the movant does not conclusively disprove the challenged elements, then the trial court cannot grant such motion and the fact issues will be resolved by the factfinder. *See id.* at 227–28.

## B. Inverse condemnation

Article I, section 17, of the Texas Constitution, the "takings clause," provides a waiver of governmental immunity for claims arising from an unconstitutional taking of property for public use without adequate compensation. *See* Tex. Const. art. I, § 17; *Kirby Lake Dev. v. Clear Lake City Water*, 321 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2008), *aff'd,* 320 S.W.3d 829 (Tex. 2010) ("There is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims within the ambit of article I, section 17 of the Texas Constitution"). This clause mandates that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17.

When a governmental entity intentionally takes private property for public use without adequately compensating the landowner, "the owner may recover damages for inverse condemnation." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). To assert inverse condemnation, a claimant must plead: (1) the governmental unit intentionally performed an act (2) that resulted in

the taking, damaging, or destruction of the claimant's property (3) for public use. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Kirby Lake Dev.*, 321 S.W.3d at 5.

## C. "Negligent trespass" claim

Within its traditional summary judgment motion, MUD challenged the Thorntons' "negligent trespass" claim on the basis that a constitutional taking cannot be based on negligence. According to MUD, the Thorntons' "negligent trespass" claim failed to invoke the trial court's jurisdiction as a matter of law. We agree.

The Texas Supreme Court has explained the intent element of an inverse condemnation claim is satisfied by proof that the governmental unit (1) knows that the specific act is causing identifiable harm or (2) knows that the specific property damage is substantially certain to result from authorized government action—that is, that the harm is necessarily incident to, or necessarily a consequential result of the government's action. *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004) ("This definition comports with the definition of 'intent' in the Restatement of Torts . . . ."). In order to sufficiently allege the intent element for a takings claim, it is not enough merely to allege that the act causing the damage was intentional. *See id.* at 313–14. However, it is not necessary to show that the governmental entity intended to cause the damage. *Id.* at 314. Rather, a party must allege the governmental entity knew that a specific act was causing identifiable harm, or at least knew that the damage was substantially certain to occur. *See id.* Additionally, the Texas Supreme Court repeatedly has held that acts of mere negligence will not support a taking. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 820 (Tex. 2009) ("[T]he government's 'mere negligence which eventually contributes to the destruction of property is not a taking'; rather, the

11

government must act intentionally." (footnote omitted)); *Gragg*, 151 S.W.3d at 554 ("[W]e strive to avoid what would be anomalous result if the State, an entity otherwise generally entitled to immunity for negligence, were subject to liability for something less than intentional behavior."); *Jennings*, 142 S.W.3d at 313; *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997).

"A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation." *Harris Cnty. v. Cypress Forest Pub. Util. Dist.*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Few cases have addressed the viability of an independent claim for "negligent trespass." *Compare Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 298 S.W.3d 436, 448 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding trespass claim predicated on negligent failure to act rather than on commission of "an intentional act that violates a property right or would be practically certain to have that effect" fails as matter of law), *with Watson v. Brazos Elec. Power Co-op., Inc.*, 918 S.W.2d 639, 645–46 (Tex. App.—Waco 1996, writ denied) (jury charge error in failing to submit definition and question where plaintiff pleaded and produced evidence of "trespass predicated upon a negligent act," noting that under Restatement (Second) of Torts § 165 trespass may be committed negligently). The Texas Supreme Court has not yet directly addressed the issue, but apparently does recognize that different damage recoveries are available for trespass, "depending on whether the trespass was committed intentionally, negligently, accidentally, or by an abnormally dangerous activity." *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 920 (Tex. 2013) (discussing *Watson*, 918 S.W.3d at 645).

The Thorntons primarily argue that MUD's reliance on *Jennings* for the proposition that an intent requirement applies to their "negligent trespass" claim is misplaced because *Jennings* "had nothing to do with trespass but instead involved eminent domain and nuisance."[5]  However, we decline to read *Jennings* so narrowly.  Instead, *Jennings* indicated that the heightened intent requirement would apply whenever a plaintiff's theory of recovery is based on the governmental entity's physical damage of private property in order to confer a public benefit, i.e., a constitutional taking.  *See* 142 S.W.3d at 314; *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) ("In [*Jennings*], we held that a heightened intent standard is indeed necessary to support a takings claim . . . .").  To that end, where a plaintiff has alleged trespass in the context of a constitutional taking, Texas courts also have applied the *Jennings* standard.  *See, e.g., City of El Paso v. Ramirez*, 431 S.W.3d 630, 635, 639–40 (Tex. App.—El Paso 2014, no pet.); *City of Midland v. Walton*, No. 11-08-00053-CV, 2008 WL 5100942, at *2–3 (Tex. App.—Eastland Dec. 4, 2008, pet. denied) (mem. op.).  In their petition, the Thorntons expressly alleged that MUD's "trespass constitutes a taking of their land for public purposes."  The Thorntons then incorporated this "taking" allegation into their "negligent trespass" claim.

Within their "negligent trespass" claim, the Thorntons alleged that "[i]n addition to other counts, [MUD] *negligently* trespassed on [their] property" and "entered upon [their] property and began excavating."  (Emphasis added).  The Thorntons did not provide any further details as to how MUD allegedly entered onto their property or performed its excavation in a negligent manner.  Assuming solely for purposes of our analysis without deciding the viability of a "negligent trespass" claim, and construing the pleadings liberally in the Thorntons' favor,

_____

[5] *See* 142 S.W.3d at 316 ("[A] city may be held liable for a nuisance that rises to the level of a constitutional taking.").

looking to their intent, and accepting their factual allegations as true, *see Miranda*, 133 S.W.3d at 226, 228, we conclude that to the extent they are attempting to bring a takings claim based on a negligence theory,[6] their "negligent trespass" claim is barred. *See Gragg*, 151 S.W.3d at 554; *Jennings*, 142 S.W.3d at 313.

The only basis for waiver of governmental immunity the Thorntons alleged in their petition was article I, section 17, of the Texas Constitution. Because the Thorntons asserted no other grounds for a waiver of MUD's governmental immunity,[7] and a claim for constitutional taking cannot be based on mere negligence, we conclude that the Thorntons' pleadings failed to invoke and affirmatively negated the trial court's jurisdiction over their "negligent trespass" claim. *See Miranda*, 133 S.W.3d at 227.

On appeal, the Thorntons now contend that "negligent trespass" would be cognizable under the provision for negligence in the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011).[8] In both its jurisdictional plea and summary judgment motions, MUD pointed out that the

---

[6] If the Thorntons' "negligent trespass" claim were not based on a negligence theory, then arguably it would be duplicative of and subsumed by their trespass claim. For instance, they incorporated the same allegation of damages flowing from their trespass claim into their "negligent trespass" claim. *See Coinmach*, 417 S.W.3d at 920–21.

[7] It is the plaintiff who must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Tex. Dep't of Pub. Safety v. Grisham*, 232 S.W.3d 822, 824 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

[8] Even where a plaintiff has cast a trespass claim in terms of negligence, courts generally have refused to find waiver of governmental immunity pursuant to the Texas Tort Claims Act. *See, e.g., Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 704 (Tex. App.—Corpus Christi 2011, no pet.) ("Although Dyer attempts to characterize his trespass claim as a negligence claim," immunity not waived under Texas Tort Claims Act); *Cypress Forest*, 50 S.W.3d at 553–54 (same for plaintiff's "trespass" claim of dumping hazardous materials on land); *but see Kilburn v. Fort Bend Cnty. Drainage Dist.*, 411 S.W.3d 33, 38–40 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (rejecting county's argument that plaintiffs were merely trying to disguise trespass claim as negligence to circumvent immunity under Texas Tort Claims Act).

14

Thorntons only alleged constitutional taking under article I, section 17, as opposed to any other constitutional or statutory basis for waiver of governmental immunity. However, the Thorntons failed to otherwise allege any other basis for jurisdiction in their responses or in any of their amended petitions. We therefore affirm summary judgment as to the "negligent trespass" claim without remanding for another opportunity to replead. *See Miranda*, 133 S.W.3d at 227; *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action."); *Cypress Forest*, 50 S.W.3d at 554 (noting plaintiff's failure to take advantage of multiple pleading opportunities).

We overrule the Thorntons' third and fourth issues as to their "negligent trespass" claim.

## D. Inverse condemnation, nuisance, and trespass claims

With regard to the Thorntons' claims for inverse condemnation, nuisance, and trespass, MUD asserted that they had to plead and prove the elements of a constitutional taking in order to pierce MUD's governmental immunity. Except as to "negligent trespass," MUD did not focus its jurisdictional attack on the Thorntons' pleadings—i.e., MUD did not specifically argue in the trial court that the Thorntons insufficiently had pleaded the intent and public use elements of their takings claims or explain how those claims fail as a matter of law.[9] Instead, MUD

---

[9] On appeal, however, MUD further argues that the trial court would have been correct in granting its plea to the jurisdiction because a property owner cannot recover damages resulting from construction activities in a condemnation case. MUD cites to older case law for this proposition. *See Throckmorton Cnty. v. Howsley*, 28 S.W.2d 951, 952 (Tex. Civ. App.— Eastland 1930, no writ) (no recovery in condemnation for negligent construction of improvement); *see also City of Trinity v. McPhail*, 131 S.W.2d 803, 808–09 (Tex. Civ. App.—

challenged the complete lack of jurisdictional evidence on those elements.[10]

## 1. The Thorntons' pleadings sufficiently invoke jurisdiction.

### a. Intent

In any event, we conclude that the Thorntons' pleadings allege sufficient jurisdictional facts to affirmatively demonstrate jurisdiction. Not only did the

---

Galveston 1939, no writ) (same); *Fort Worth & D.S.P. Ry. Co. v. Gilmore*, 2 S.W.2d 543, 545 (Tex. Civ. App.—Amarillo 1928, no writ) (same); *Jefferson Cnty. Traction Co. v. Wilhelm*, 194 S.W. 448, 452–53 (Tex. Civ. App.—Beaumont 1917, no writ) (same). We agree with MUD insofar as an alleged takings claim in fact only sounds in negligence. MUD further relies on *Loyd v. ECO Resources, Inc.*, which was not a condemnation case, but where this court explained: "If the damage is clearly attributable to negligent acts of the agents of the governmental unit, there is no liability under the rationale that a damaging from unintended and negligent acts results in no benefit to the public." 956 S.W.2d 110, 128 (Tex. App.—Houston [14th Dist.] 1997, no writ). However, *Loyd* also went on to state that "'[d]amaging' of property on account of 'public' use, required to be compensated under article I, section 17 of the Texas Constitution, includes injury from the construction of public works and their subsequent maintenance and operation." *Id.* We see no reason that *Loyd* or any other cited authority would foreclose non-negligence-based constitutional taking claims and recovery of damages related to the ongoing construction and operation by MUD of the drainage project here. Aside from their "negligent trespass" claim, nothing in the Thorntons' pleading of its counterclaims clearly attributes the lead contamination property damage to MUD's negligence. Although MUD adamantly asserts that it did not make any decision or intend to contaminate the Thorntons' property through its public drainage project, and such alleged contamination does not serve any public purpose, the Thorntons' pleadings construed liberally do not affirmatively negate jurisdiction on this basis. Nor did MUD present any supporting evidence to conclusively establish such lack of intent or public use.

To the extent MUD contends that even a properly pleaded non-negligence-based takings claim must be pursued in a separate proceeding from the condemnation suit, we disagree, as this court permits them to be tried together. *See Martini v. City of Pearland*, No. 14-11-00111-CV, 2012 WL 1345744, at *1–2, *7–8 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, pet. denied) (mem. op.) (city brought eminent domain suit and property-owner brought inverse condemnation counterclaim for alleged negative drainage impact from road construction); *State v. Clear Channel Outdoor, Inc.*, No. 14-07-00369-CV, 2008 WL 2986392, at *4 (Tex. App.—Houston [14th Dist.] July 31, 2008, no pet.) (mem. op.) (affirming denial of plea where State brought condemnation suit for highway development project and lessee asserted inverse condemnation claim for damaging of its property interests).

[10] MUD did not contest the causation element that the governmental entity's act must result in the taking, damaging, or destruction of property. *See Gen. Servs. Comm'n*, 39 S.W.3d at 598; *Kirby Lake Dev.*, 321 S.W.3d at 5.

Thorntons allege that in 2011, MUD entered onto their property, began excavating soil, and introduced and dumped lead-"contaminated soil" onto their property, which resulted in contamination of and damages to the property's value, but also they alleged that such behavior "is ongoing and has continued day to day." Contrary to MUD's contention, the Thorntons are not required to plead[11] and prove that MUD intended to contaminate their soil. *See Jennings*, 142 S.W.3d at 314; *City of Anson v. Harper*, 216 S.W.3d 384, 393 (Tex. App.—Eastland 2006, no pet.) (not necessary for takings claim that city knew its surface activities would damage plaintiffs' copper deposit—"work was done intentionally to alter the surface, which because of the copper deposit and plaintiffs' rights under the mineral reservation, arguably caused damage"). Rather, they must allege that MUD knew that a specific act was causing identifiable harm, or at least knew that the damage was substantially certain to occur. *See Jennings*, 142 S.W.3d at 314.

Construing the pleadings liberally in favor of jurisdiction, looking to the Thorntons' intent, and accepting the allegations in the pleadings as true, *see Miranda*, 133 S.W.3d at 226, these facts indicate at some point MUD had knowledge that its introduction and dumping of such lead-"contaminated soil" would damage or destroy the Thorntons' private property and such damage was "necessarily an incident to" its conduct, meaning it was "substantially certain" to occur as a result of MUD's actions in using or continuing to use lead-contaminated soil in its drainage work on the Thorntons' property. *See Jennings*, 142 S.W.3d at 314. We conclude that the Thorntons' pleadings sufficiently alleged facts to show MUD's intent.

---

[11] Again, MUD's attack focused on the lack of evidence of intent, rather than insufficient pleading.

### b. Public use

While there is no concrete rule for determining whether a particular use is a public use, generally, the meaning is limited to situations in which the damages arise out of or are incident to the construction and operation of public works. *See Steele v. City of Houston*, 603 S.W.2d 786, 790–91 (Tex. 1980); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 128 (Tex. App.—Houston [14th Dist.] 1997, no writ). Thus, MUD's contention that the Thorntons must plead[12] and prove MUD's alleged soil contamination itself serves a public use or that the use of contaminated soil be integral to its public project is incorrect. *See Harper*, 216 S.W.3d at 393 ("Nor must plaintiffs show that a direct benefit flowed to the public from the damage done to plaintiffs' copper deposit."). Instead, the question for the court is whether there results to the public some definite right or use in the project or undertaking to which the property is devoted. *See Dyer v. Tex. Elec. Serv. Co.*, 680 S.W.2d 883, 884–85 (Tex. App.—El Paso 1984, writ ref'd n.r.e.); *Loyd*, 956 S.W.2d at 128. The key consideration in assessing whether a particular taking was for a public use is whether the public is bearing a cost for which it received a benefit. *See Gragg*, 151 S.W.3d at 554–55.

Here, MUD brought an eminent domain suit against the Thorntons to condemn an easement on their property "to facilitate necessary drainage for" MUD and "to accomplish [MUD's] public project." In their pleadings, the Thorntons alleged that MUD took possession of and began an ongoing process of excavating soil and dumping contaminated soil on their property "for a public purpose." We conclude that members of the public who live, work, or travel through the areas served by MUD's drainage project arguably will receive a benefit from improved

---

[12] Again, MUD's attack focused on the lack of evidence of public use, rather than insufficient pleading.

drainage. *See id.*; *see also Harper*, 216 S.W.3d at 393 ("The public benefitted from the City's dirt work because it was done to help construct a public landfill."); *Dyer*, 680 S.W.2d at 884–85 (condemnation for electric power line was public use despite serving one customer because arguably would benefit public through increased oil production by customer). Based on a liberal construction favoring jurisdiction and taking the facts as true, *see Miranda*, 133 S.W.3d at 226, the Thorntons pleaded facts that could establish that the damage to their property arose out of or was incident to construction of a public work. *See Ramirez*, 431 S.W.3d at 639–40. We conclude that the Thorntons' pleadings sufficiently alleged facts to show public use.

## 2. The trial court committed harmful error when it granted MUD's no-evidence summary judgment.

### a. A no-evidence motion for summary judgment is not a valid means to attack the existence of jurisdictional facts.

Because the Thorntons have alleged facially valid takings claims, we proceed to the next step under *Miranda* wherein the governmental entity can challenge the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 227. The Texas Supreme Court has expressly sanctioned the use of a standard that "mirrors" rule 166a(c), or a traditional motion for summary judgment. *Id.* at 228; *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). As the movant in this jurisdictional plea process, MUD thus has the initial burden to prove there are no genuine issues of material fact as to at least one of the challenged elements of intent and public use, such that it is entitled to judgment as a matter of law. *See Garcia*, 372 S.W.3d at 635 ("Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction."); *Miranda*, 133 S.W.3d at 227–28; *City of Dallas v.*

*Zetterlund*, 261 S.W.3d 824, 829 (Tex. App.—Dallas 2008, no pet.) ("Given our standard of review, the question is whether the City proved as a matter of law that at least one of the challenged elements [of intent and public use] is absent."). This requirement protects a plaintiff from having to put on his case simply to establish jurisdiction. *Miranda*, 133 S.W.3d at 228. But it also protects the interests of the governmental entity by allowing it in a timely manner to extricate itself from litigation if it is truly immune. *Id.*

If the movant carries its burden, the nonmovant then has the burden to show a disputed material fact issue exists regarding the jurisdictional issue. *Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228. "[W]e must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). However, as with a traditional motion for summary judgment, if MUD fails to present conclusive proof of facts negating subject matter jurisdiction, the burden does not shift to the Thorntons to establish the existence of an issue of material fact. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228; *Tex. State Office of Admin. Hearings v. Birch*, No. 04-12-00681-CV, 2013 WL 3874473, at *3 (Tex. App.—San Antonio July 24, 2013, pet. denied) (mem. op.) ("If the defendant carries its burden, the plaintiff then has the burden to show a disputed material fact issue exists regarding the jurisdictional issue."); *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 103 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[I]n a plea to the jurisdiction, a defendant must produce evidence that the trial court lacks jurisdiction *before* the plaintiff has the burden to present evidence establishing a fact question regarding jurisdiction."); *Dall. Cnty. v. Wadley*, 168 S.W.3d 373, 379 (Tex. App.—Dallas 2005, no pet.) (denial of plea affirmed in premises defect case; plaintiff "had no burden to present evidence of the County's

20

knowledge until the County had established its lack of knowledge").

The Thorntons rely on *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785 (Tex. App.—Houston [1st Dist.] 2012, no pet.), to argue that the trial court should not have granted summary judgment to MUD because a no-evidence motion for summary judgment is an improper vehicle for a jurisdictional plea. In *Green Tree*, our sister court was presented with and addressed the question of "whether standing can be challenged in a no-evidence motion for summary judgment." 388 S.W.3d at 790. The court ultimately held that a trial court's subject matter jurisdiction cannot be challenged in a no-evidence motion for summary judgment. *Id.* at 794. The court provided the following legal principles as the bases for its decision:

- Allowing a challenge to subject matter jurisdiction in a no-evidence motion has the effect of depriving a trial court of jurisdiction over a case in circumstances in which jurisdiction has not been affirmatively disproved. *Id.* at 792.

- Permitting a movant to obtain no-evidence summary judgment when the nonmovant's evidence is incomplete effectively deprives the trial court of jurisdiction not when jurisdiction has been disproved, but rather when it is uncertain. *Id.*

- In the absence of evidence disproving jurisdiction, a jurisdictional plea can only be granted when the pleadings affirmatively negate jurisdiction, with an emphasis on the rule that a plaintiff's good faith allegations are to be used and, if there is a gap in jurisdictional facts, the plaintiff should be allowed to replead. *Id.*

- With a no-evidence motion, jurisdiction could be deprived without any consideration of the plaintiff's pleadings. *Id.*

- Even when a plea is granted, the case is dismissed without prejudice unless the plaintiff cannot remedy the defect, but a no-evidence summary judgment requires dismissal with prejudice. *Id.*

21

- Finally, in both a plea to the jurisdiction and a traditional motion for summary judgment, the defendant bears the burden of proving the trial court's lack of jurisdiction. *Id.*

The *Green Tree* court thus concluded that allowing subject matter jurisdiction challenges in no-evidence motions conflicts with the safeguards and presumptions that protect the trial court's jurisdiction, would deprive the trial of jurisdiction without a showing that the court actually lacks jurisdiction, and would prevent a party from removing any impediments to jurisdiction and then returning to court. *Id.* at 794.

The *Green Tree* court highlighted with particular concern situations where the determination of subject matter jurisdiction implicates the merits of the parties' cause of action, and indicated that the Texas Supreme Court in *Miranda*, 133 S.W.3d at 228, has only "specifically approved treating evidentiary challenges to subject-matter jurisdiction like a *traditional* motion for summary judgment" under rule 166a(c). *Green Tree*, 388 S.W.3d at 793. Allowing defendants to challenge subject matter jurisdiction by way of no-evidence motion in such circumstances would force plaintiffs to "put on their case simply to establish jurisdiction" and would eliminate any burden on the defendant other than to identify the specific ground he believes to be lacking evidentiary support. *Id.* at 793–94 (quoting *Miranda*, 133 S.W.3d at 228); *see also City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) ("The defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue.").

We find *Green Tree* to be well reasoned and persuasive. Here, a determination of the trial court's subject matter jurisdiction clearly implicates the merits of the Thorntons' takings claims. *See Walton*, 2008 WL 5100942, at *3 (*Jennings* intent issue involves jurisdictional facts that implicate merits); *see also*

22

*Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.) (explaining that where "many if not most of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits of her case," jurisdictional issue implicates merits). MUD brought a no-evidence summary judgment motion to challenge the Thorntons' jurisdictional facts, specifically the constitutional taking elements of intent and public use. MUD, however, presented no evidence of its own to establish that there was no intent on its part and that the alleged damages to the Thorntons' property did not arise out of or were not incident to a public use. The Thorntons filed a response and accompanying evidence. Although the Thorntons did not cite *Green Tree* in their response to MUD's no-evidence summary judgment, they expressly argued that MUD's motion must be denied because it "improperly requires [them] to marshal all of [their] evidence to prove each element of every cause of action." To the extent they even were required to, we conclude that the Thorntons preserved this issue for our review. *See Green Tree*, 388 S.W.3d at 794–95 (not requiring objection for preservation).

Permitting MUD to challenge subject matter jurisdiction in a no-evidence motion for summary judgment improperly shifts the jurisdictional evidentiary burdens—effectively requiring the Thorntons to fully marshal their evidence simply to establish jurisdiction and eliminating any burden on MUD as a governmental entity to disprove jurisdiction through summary judgment evidence.[13] We conclude that a trial courts subject matter jurisdiction cannot be

_____

[13] In their brief, MUD argues that even if the Thorntons' allegations are taken as true, they failed to produce any evidence supporting essential elements of their claims. MUD noted how the Thorntons would have the burden of proof at trial on their constitutional taking claims and that MUD had moved for no-evidence summary judgment under rule 166a(i) after an adequate time for discovery had passed. MUD, however, provided no response to *Green Tree* and did not present, nor has this court found, any binding or otherwise persuasive authority that would convince us to depart from the dictates of *Miranda* to sanction use of a no-evidence

challenged in a no-evidence motion for summary judgment, *see id.* at 794, and the trial court thus erred in granting MUD summary judgment as to the Thorntons' counterclaims for inverse condemnation, nuisance, and trespass.

### b. Harm

The *Green Tree* court proceeded to a harm analysis: "If the trial court could have treated [the defendants'] motion as a plea to the jurisdiction and granted it, we must affirm. Stated another way, if the record establishes that the trial court lacks jurisdiction, there is no harm." *Id.* at 795. However, if the pleadings and the available record do not otherwise conclusively negate the existence of the trial court's jurisdiction, the plaintiff is harmed by the trial court's no-evidence jurisdictional plea ruling. *See id.*

We already have determined that the Thorntons' pleadings are sufficient to facially invoke the trial court's jurisdiction over their inverse condemnation, nuisance, and trespass claims. Nor does any of the evidence—all of which was presented by the Thorntons[14]—affirmatively establish that the trial court lacks jurisdiction over their taking claims.[15] In other words, it does not conclusively

---

summary judgment to attack subject matter jurisdiction.

[14] The Thorntons' summary judgment exhibits included October 25, 2012 correspondence from Shelley addressed to U.S. representative Gene Green and copied to the Texas Commission on Environmental Quality, Harris County Attorney Vince Ryan, and Harris County Pollution Control, regarding the county drainage project and the resulting lead contamination to their property; a September 2011 lab report regarding lead readings on their property; photographs of their property; excerpts from a July 2013 appraisal report; a July 2013 expert report regarding soil contamination; April 15, 2011 correspondence from Frank's attorney at the time to the contractor and developer regarding the alleged trespass onto and digging of the Thorntons' property; and an April 2011 professional engineer report regarding possible drainage effects from the proposed subdivision containing a bid for installation of a bulkhead.

[15] We remain aware that the jurisdictional facts significantly intertwine with the merits in this case and thus only review the available evidence to the extent necessary to assess harm. In *Clear Channel Outdoor*, where the State challenged the plaintiff's pleadings in its jurisdictional plea, this court indicated that "any inquiry into the evidentiary support for" the State's assertions,

establish MUD's lack of intent or that the alleged damage to the Thorntons' property did not arise out of or incident to a public use. The Thorntons' submitted evidence certainly does not foreclose the possibility that MUD could have known that its actions were causing identifiable harm to the Thorntons' property or that such harm was substantially certain to result from its actions, and that MUD could have damaged their property for a public use.[16] The record does not affirmatively show that the trial court lacked subject matter jurisdiction over the Thorntons' counterclaims for inverse condemnation, nuisance, and trespass.

Accordingly, we conclude that the error in granting MUD's no-evidence summary judgment is harmful. *See* Tex. R. App. P. 44.1(a); *Green Tree*, 388 S.W.3d at 796. We sustain the Thorntons' third issue and do not reach their fourth issue, as to their counterclaims for inverse condemnation, nuisance, and trespass. *See* Tex. R. App. P. 47.1.

---

including that the State never intended to take or destroy the billboard at issue, where the State did not present evidence to the trial court in an attempt to conclusively negate the existence of jurisdiction, would be an "impermissible inquiry into the merits of Clear Channel's claims." 2008 WL 2986392, at *4 & n.4.

[16] Although we need not reach the Thorntons' second issue to finally dispose of this appeal, *see* Tex. R. App. P. 47.1, because whether we consider any abuse of discretion by the trial court in apparently "striking" certain portions of the Thorntons' jurisdictional evidence, the court's ruling as to the Thorntons' "negligent trespass" claim would still be correct and the court still would have committed reversible error as to the Thorntons' other counterclaims, it deserves brief mention simply because it is baffling. The complained-of summary judgment order appeared to incorporate "by the parties['] stipulations" two previous evidentiary rulings related to MUD's objections to the Thorntons' exhibits filed in response to MUD's earlier "right to take" summary judgment. However, our review of the record fails to reveal, and MUD concedes that it did not file, any written objections with regard to the Thorntons' jurisdictional summary judgment exhibits. Nor does the record reveal any requisite rule 11 stipulation to carry forward any such evidentiary rulings to the later proceeding. Finally, because the two sets of summary judgment exhibits filed by the Thorntons were not identical (certain exhibits were either changed, new, or not presented), even if MUD had made objections or the parties had entered a stipulation, the prior evidentiary rulings do not cogently carry forward.

## IV.    CONCLUSION

We affirm the trial court's order insofar as it granted summary judgment in favor of MUD on the Thorntons' "negligent trespass" counterclaim.  We reverse in part the summary judgment on the Thorntons' counterclaims for inverse condemnation, nuisance, and trespass, and remand for further proceedings.


/s/         Marc W. Brown
            Justice

Panel consists of Justices Boyce, Christopher, and Brown.