In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00161-CV**
_____

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant**

**V.**

**NEFTALI CISNEROS, Appellee**

**On Appeal from the 88th District Court**
**Tyler County, Texas**
**Trial Cause No. 23,261**

**MEMORANDUM OPINION**

This interlocutory appeal arises from the trial court's denial of the Texas Department of Criminal Justice's ("TDCJ") plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017) (allowing an appeal from an interlocutory order denying a plea to the jurisdiction by a governmental unit). Because timely formal notice of the claim was not provided, and TDCJ had no actual notice, the trial court erred in denying TDCJ's plea. Accordingly, we reverse the trial

1

court's order denying TDCJ's plea to the jurisdiction and render judgment dismissing appellee Neftali Cisneros's claims for lack of subject-matter jurisdiction.

## Background

Neftali Cisneros, an offender incarcerated at the Gib Lewis Unit within TDCJ, filed suit against TDCJ after he was seriously injured in an accident involving a commercial woodworking saw in the furniture factory within the unit. Cisneros alleges that as he approached the saw, it was turned off and the power was disconnected. Another offender assisting Cisneros turned on the saw while Cisneros used an air hose to clean it. Cisneros came into contact with the saw blades, severing his right hand and fingers. Cisneros sued TDCJ for negligence.

In two issues on appeal, TDCJ first alleges that the trial court erred in denying TDCJ's plea to the jurisdiction because Cisneros did not give TDCJ timely formal notice of his claim and TDCJ did not have actual notice of Cisneros's claim before suit was filed, and second, TDCJ contends Cisneros failed to plead a cause of action for which sovereign immunity is waived under the Texas Tort Claims Act ("TTCA"). TDCJ asserts that the absence of timely notice is an incurable jurisdictional defect. *See* Tex. Gov't Code Ann. § 311.034 (West 2013) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

2

## Standard of Review

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam). "Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "If a governmental unit has immunity from a pending claim, a trial court lacks subject matter jurisdiction as to that claim." *Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 756 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because the existence of subject matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction *de novo*. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

In a plea to the jurisdiction, a defendant may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In this case, TDCJ challenged the existence of jurisdictional facts. Therefore, this court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id*. at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be

3

denied, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *Id.* at 226–28; *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

The standard of review for a plea to the jurisdiction based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228; *see also Thornton v. Ne. Harris Cty. MUD 1*, 447 S.W.3d 23, 32 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under this standard, we take as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. "[A]fter the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiff[ ], when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.*; *see also City of Galveston v. Murphy*, 533 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (stating that if the movant presents conclusive proof that the trial court lacks subject matter jurisdiction, then the nonmovant must present

4

evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained). Thus, because the trial court ruled on TDCJ's plea to the jurisdiction, we are compelled to review such ruling from the record before the trial court at the time of its ruling.

## The Texas Tort Claim Act's Notice Requirements

Absent a waiver, governmental entities, like TDCJ, are generally immune from suits for damages. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010). The Texas Tort Claims Act waives governmental immunity for negligent acts in certain circumstances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011). To take advantage of this waiver and overcome the shield of governmental immunity, a claimant must notify a governmental unit of the negligent act not later than six months after the incident. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a) (West 2011). There are two methods of accomplishing notice: formal written notice and actual notice. *See Arancibia,* 324 S.W.3d at 548.

The purpose of the notice requirement is to ensure prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Tex. Dep't Crim. Justice v. Simons*, 140 S.W.3d 338, 344 (Tex. 2004). The failure to comply with the notice

5

requirements in the Texas Tort Claims Act deprives the trial court of subject matter jurisdiction. *Carbajal*, 324 S.W.3d at 537–38.

## A. Formal Notice

Regarding a claim against a governmental unit based on a waiver of immunity under the Texas Tort Claims Act, the governmental unit is entitled to written notice of a claim against it not later than six months after the day that the incident giving rise to the claim occurred. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a). "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* Formal notice must be submitted in writing. *Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex. 1995) (per curiam).

## B. Actual Notice

The Texas Tort Claims Act provides an exception to the written notice requirement when the governmental unit has "actual notice that . . . the claimant has received some injury[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c). The Supreme Court of Texas analyzed the notice provisions in the Texas Tort Claims Act in *Cathey v. Booth* and held that for a governmental unit to have such actual knowledge, it requires the governmental unit's: (1) knowledge of a death, injury, or property damage; (2) subjective awareness of the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3)

6

knowledge of the identity of the parties involved. 900 S.W.2d at 341. The high court later clarified the meaning of the second requirement by stating that "[w]hat we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a)." *Simons*, 140 S.W.3d at 347. In *Simons*, the court explained that this requirement "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Id.* Subjective awareness is required because if a governmental entity is not aware of its fault, it does not have the same incentive to gather the information the statute is designed to provide. *Id.* at 348. "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Arancibia*, 324 S.W.3d at 550.

**Analysis**

It is undisputed that Cisneros did not give TDCJ formal notice of his claim as provided by section 101.101(a) within six months from the date of the accident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a). Cisneros pleaded that his formal written grievance at the prison was filed and returned on October 13, 2015, well outside of the statutory time period. Cisneros argues though, that TDCJ had actual notice as provided by section 101.101(c).

7

*Texas Department of Criminal Justice v. Simons* is analogous to the case before us. 140 S.W.3d at 339–43. In that case, an inmate was severely injured while working for the prison. *See id.* at 339. The incident involved the operation of a tractor and auger by a prison work supervisor. *Id.* The auger became stuck in the ground, and the inmate attempted to back the auger out with a pipe wrench while the power take-off was disengaged. *Id.* Although it was not clear exactly how it happened or whether the work supervisor notified the inmate to stand clear, the power take-off was re-engaged while the inmate was in the vicinity. *Id.* This caused the pipe wrench to swing around and strike the inmate in the head. *Id.* Just as in the present case, TDCJ conducted an investigation and took statements from the individuals involved and witnesses. *See id.* The work supervisor prepared an "offense report" which cited the inmate for violating prison rules. *Id.* at 340. An additional report was prepared by the prison's safety officer which again noted the inmate's violation of safety policy and procedures. *Id.*

The question of whether TDCJ had actual notice was the crucial issue in *Simons*. *Id.* at 343. In resolving disagreement among the various courts of appeals regarding the holding in *Cathey v. Booth*, the Texas Supreme Court explained that case "cannot fairly be read to suggest that a governmental unit has actual notice of a

8

claim if it could or even should have learned of its possible fault by investigating the incident." *Id.* at 347. The Court went on to reason

> [i]t is not enough that a governmental unit . . . did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might be at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Id.* at 374–48. The Court ultimately held "that actual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and a subjective awareness that its fault produced or contributed to the claimed injury." *Id.* at 348.

Cisneros contends that because the injury occurred on the government unit's property and was responded to by the prison's employees and because TDCJ investigated the incident and produced an official report, actual notice can be imputed to a governmental unit through an agent or representative who has a duty to investigate and report to a person of authority. An Administrative Incident Review was conducted and Serious Incident Report was issued by the TDCJ Emergency Action Center.

> An investigation into the incident by Furniture Factory Supervisor John Risinger and Safety Officer Alan Gordon revealed the following. Offender Cisneros was assigned to the Furniture Factory on March 13, 2004. On this date, Offender Cisneros was given initial safety training

and was assigned to the maintenance department of the Furniture factory to perform all maintenance work concerning the upkeep and repair of all machinery located in the Furniture Factory. Further investigation revealed ***Offender Cisneros acted irresponsibly and without authorization*** from the mill shop supervisor to work on the tenoner [saw] machine that resulted in an unsafe act by turning the machine on and failing to use safeguarded methods resulting in his injuries. Offender Cisneros received the appropriate disciplinary case for ***his negligent behavior*** by failing to get a supervisor to lock out the machine before he began work on it. (Emphasis added).

The investigation reports do not show TDCJ's fault. The fact that TDCJ investigated Cisneros's accident does not constitute subjective awareness on the part of TDCJ that its fault produced or contributed to Cisneros's injury. *See id.* at 347–48. Indeed, the results of TDCJ's investigation indicated Cisneros, not TDCJ, was responsible for the accident. Cisneros further argues that this court should infer from the trial court's order denying TDCJ's Plea to the Jurisdiction that there is a need for further discovery to resolve a fact issue regarding TDCJ's subjective awareness. In conjunction with his response to TDCJ's Plea to the Jurisdiction, Cisneros filed a Motion to Compel discovery and argues that the trial court's denial of the plea implies the trial court's approval of his Motion to Compel. However, no order of the trial court granting his Motion to Compel discovery is included in the record before us. Cisneros was charged with obtaining a ruling on his Motion to compel, objecting if the court refused to rule, or otherwise obtaining a continuance from the trial court to conduct further discovery. *See* Tex. R. App. P. 33.1(a)(2).

10

Under these circumstances, we determine that TDCJ conclusively proved, as a matter of law, that the trial court lacked subject matter jurisdiction because TDCJ was not shown to have subjective awareness of its fault, as alleged by Cisneros, in producing or contributing to Cisneros's injuries, or otherwise have sufficient notice pursuant to the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101; Tex. Gov't Code Ann. 311.034; *Arancibia*, 324 S.W.3d at 548–49; *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people could not differ in their conclusions[.]"). Cisneros did not present evidence sufficient to raise a material issue of fact regarding jurisdiction after TDCJ proved that the trial court lacked jurisdiction; therefore, we hold that the trial court erred in denying TDCJ's plea to the jurisdiction, and we render judgment dismissing Cisneros's claims. *See Miranda*, 133 S.W.3d at 228; *see also Murphy*, 533 S.W.3d at 359.

We do not reach the second issue on appeal, as it would afford TDCJ no greater relief.

## Conclusion

We reverse the trial court's order denying TDCJ's plea to the jurisdiction and render judgment dismissing Cisneros's claims against TDCJ for lack of subject matter jurisdiction.

11

REVERSED AND RENDERED.

_____

CHARLES KREGER
Justice

Submitted on November 22, 2017
Opinion Delivered March 1, 2018

Before McKeithen, C.J., Kreger, and Horton, JJ.